**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: November 04, 2016.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-53018-CAG |
| | § | |
| JAMES AND CORINNE GANDY, | § | CHAPTER 7 |
| | § | |
| Debtors. | § | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | ADV. NO. 15-05083-CAG |
| v. | § | |
| | § | |
| JAMES AND CORINNE GANDY, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER GRANTING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Came on for consideration the above-numbered adversary proceeding and, in particular,

Plaintiff's (United States of America "United States" or Internal Revenue Service "IRS") Motion

for Summary Judgment filed May 16, 2016 (the "Motion") (ECF[1] No. 16).  Defendant Corrine Gandy filed a Response in opposition to the Motion on June 6, 2016 (the "Response") (ECF No. 20).  Plaintiff filed its Reply to the Response on June 24, 2016 (the "Reply") (ECF No. 24).  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determination of dischargeability of a debt).  Venue is proper under 28 U.S.C. §§ 1408(1) and 1409(a).  This matter is referred to this Court under the District Court's Order of Reference.  For the reasons stated in this Memorandum Opinion and Order, the Court is of the opinion that Plaintiff's Motion should be GRANTED.

## PROCEDURAL BACKGROUND

On October 15, 2015, the United States filed this adversary proceeding asking the Court to determine that James and Corinne Gandy's ("the Gandys") joint $2.8 million federal income tax liability (Form 1040) for tax year 2007 is non-dischargeable, or is an exception to discharge, under 11 U.S.C. § 523(a)(1)(C).  James Gandy previously waived his discharge under 11 U.S.C. § 727(a)(10) (ECF. No. 11).  As such, the United States is seeking a judicial determination that Mrs. Gandy's (hereinafter "Defendant") 2007 tax liability is non-dischargeable.

The United States asserts that Defendant's 2007 tax liability is non-dischargeable due to Defendant's willful attempts to evade or defeat her tax liability.  The United States alleges that Defendant took affirmative actions to defeat both the assessment and the collection of her 2007 federal income tax liability by filing a false original 2007 income tax return that omitted over $18 million in taxable income.  Further, the United States alleges that Defendant's actions—such as her fraudulent transfers of assets to family members and her extravagant lifestyle with funds that should have been used to pay her federal tax debt—demonstrate a willful attempt to evade the payment of taxes.

---

[1] Unless otherwise noted, "ECF" refers to the electronic case filing in this adversary proceeding.

The amount of the Gandys' individual income tax liability for 2007 is not in dispute.  The Gandys' income tax debt was $2,846,453.45 as of the chapter 7 petition date of December 4, 2014.  (Gov. Ex. 8**;** p. 2).  The chapter 7 Trustee ("Trustee") paid the IRS $766,882 on or about October 28, 2015, from the sale of the Gandys' $1 million residence and another $90,800 from the Trustee's sale of the Gandys' airplane.  As such, the Gandys' joint 2007 individual income tax liability is roughly $2 million.

## PARTIES' CONTENTIONS

The United States contends that there is competent summary judgment evidence for the Court to find that Defendant willfully evaded the payment of her joint 2007 individual income tax liability.  The United States argues that there are a number of acts that demonstrate that Defendant evaded paying her taxes by: (1) failing to disclose her ownership interest in her home and an airplane in her bankruptcy schedules; (2) complicity in the fraudulent transfer of her $1.4 million residence to her elderly mother-in-law; (3) transferring money out of joint or personal bank accounts to her mother's bank accounts to shield the funds from discovery while IRS Collections was reviewing her tax returns; (4) omitting income on her original tax return; (5) maintaining offshore bank accounts in which she had unreported income;  and (6) purchasing luxury items, such as automobiles, while not paying her 2007 income taxes.

Defendant argues that: (1) she did not list her home in her bankruptcy schedules because her mother-in-law owned her former residence and James Gandy's company owned the airplane; (2) she transferred money to her mother's accounts to preserve money and keep James Gandy from spending all of their cash; (3) although she signed her original and amended Form 1040 income tax returns for 2007, she did not understand all of the related documentation or the operation of James Gandy's businesses; (4) the offshore accounts were James Gandy's offshore

accounts; and (6) luxury items such as automobiles were leased.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Bankruptcy Rule 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of sufficient quality so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of

material fact exists, the non-moving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993).

In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)). Therefore, the United States must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial. *Celotex*, 477 U.S. at 331. Assuming Plaintiff meets its burden and submits a properly supported Motion, Defendant must demonstrate the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson*, 477 U.S. at 248-49. Defendant must produce evidence demonstrating the existence of a triable issue of fact on at least one element of Plaintiff's claim. *See Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995).

<h1 style="text-align:center">SUMMARY OF UNDISPUTED FACTS[2]</h1>

1. In tax year 2007, the Gandys earned over $20 million, but failed to pay their 2007 federal income tax debt on that income. (Gov. Ex. 1, p. 18, lines 18-25; p. 19, lines 1-5). According to IRS Form 906, Closing Agreement on Final Determination Covering Specific Matters ("the Closing Agreement") that the Gandys signed on or about December 5, 2013, the Gandys underreported their taxable income on their original 2007 federal income tax return by $18,822,602. (Gov. Exs. 2 & 3). The Gandys' 2007 amended income tax return (Gov. Ex. 4), dated September 11, 2009, also shows that the Gandys admitted owing the IRS an additional $2,416,541 in tax for unreported income in their original 2007 income tax return. In this amended income tax return, the Gandys disclosed an additional $17,853,586 in adjusted gross income ("AGI") that they did not report in their original 2007 income tax return. (Gov. Ex. 2, p. 1; Gov. Ex. 4, p. 1).

2. In October 2015, the Trustee sold the Gandys' residence at 108 Larry Lee Drive in Kerrville, Texas for $925,000. The Trustee applied $766,882.40 of the sales proceeds to the Gandys' 2007 federal income tax debt held by the IRS, leaving a balance of $2,079,571.05. (Gov. Ex. 8, p. 2; Gov. Exs. 9 & 10). In December 2015, the Trustee sold the Gandys' airplane. On or about December 29, 2015, the United States received a check in the amount of $90,800 from the Trustee, representing the net sales proceeds from the sale of this airplane and leaving a federal income tax balance of $1,988,771.05, or approximately $2 million. (Gov. Ex. 11).

3. In 2006, the Gandys purchased a residence at 108 Larry Lee Drive in Kerrville, Texas

---

[2] In her Response, Defendant made a number of objections to the United States' summary judgment evidence. Rather than rule on the merits of those objections which generally allege hearsay or lack of foundation, the Court has not considered any evidence that Defendant finds objectionable because the Court can grant summary judgment on the United States' remaining summary judgment evidence that is not in dispute.

for $1.4 million. (Gov. Ex. 13, p. 1). In 2007, Defendant paid off the $1 million mortgage on their residence on Larry Lee Drive. (Gov. Ex. 16, p. 42, lines 15-25; p. 43, lines 1-8).

4. After the IRS filed a federal tax lien against the Gandys on January 23, 2013, the Gandys gave Prem Gandy, Mr. Gandy's elderly mother, a promissory note for $1 million and signed a deed of trust in favor of Prem Gandy that allegedly encumbered the Gandys' residence. The deed of trust was recorded on January 29, 2014, but dated June 1, 2012. (Gov. Ex. 17, p. 5). The Gandys claimed that, in 2012, Prem Gandy foreclosed on the Gandys' residence and became the record owner of the residence. (Gov. Ex. 1, p. 52, lines 5-21; p. 54, lines 1-8).

5. The Gandys did not disclose their airplane in their original Schedules. (Gov. Ex. 5, p. 6). Also after the Gandys became indebted to the IRS, Defendant conveyed her interest in certain Texas real property jointly owned with Liliane Williams, her elderly mother, to Williams in exchange for a $115,009 note receivable. (Gov. Ex. 26, lines 3-20). Further, the Gandys also failed to disclose the note receivable from Liliane Williams to Defendant in their original Schedules. (Gov. Ex. 5, p. 5). On April 30, 2015, the Gandys amended their Schedule B to include this note receivable as an asset. (Gov. Ex. 23, p. 4). The Gandys did not amend their Schedules to claim as an asset their residence on Larry Lee Drive or their airplane, notwithstanding the fact that the Trustee subsequently sold the house and airplane to pay down the Gandys' 2007 tax debt.

6. After the Gandys became indebted to the Internal Revenue Service for their 2007 income tax liability, James Gandy gave his elderly mother Prem Gandy, his brother Hary Gandy and his sister Mona Gandy an interest in two of the Gandys' businesses—Gandy Engineering and Digital Werks. (Gov. Ex. 1, p. 17, lines 2-25; p. 18, lines 1-15; Gov. Ex. 16, p. 48, lines 8-22; Gov. Ex. 25).

7. In April of 2013, Defendant withdrew $170,000 from her bank account and deposited it into a bank account of her mother, Liliane Williams. Defendant, however, she continued to control these funds. (Gov. Ex. 26, p. 144, lines 24-25; p. 145, lines 1-25, p. 146, lines 1-25; p. 147, lines 1-3; Gov. Ex. 30). In her Rule 2004 examination, Defendant admitted to opening a Wells Fargo bank account, depositing $100,000 to purchase a certificate of deposit, and adding Jason and Landon Cross, her two adult sons, to be paid upon her death, without her sons knowledge of the transaction. (Gov. Ex. 26, p. 162, lines 7-25; p.163, lines 1-8).

8. After the Gandys became indebted to the IRS for their 2007 income tax, the Gandys established foreign bank accounts in tax-haven countries. The Gandys deposited large sums of money in bank accounts in the United Arab Emirates, Lichtenstein, Switzerland, Lebanon, Belgium, and Canada. The Gandys failed to report income on these accounts to the IRS and failed to file a Report of Foreign Bank and Financial Accounts (FBAR) for these accounts, despite their continued control over those funds. (Gov. Exs. 28 & 29). In the Closing Agreement with the IRS, the Gandys admitted that they "underreported federal income taxes during the period 2003 through 2008 through offshore financial arrangements (including arrangements with foreign banks, financial institutions, corporations, partnerships, trusts, or other entities) . . . ." (Gov. Ex. 3, p. 1). In her Rule 2004 examination, Defendant admitted wire-transferring large sums of money in and out of some of these foreign bank accounts. (Gov. Ex. 26, p. 82, lines 2-25; p. 83, line 1; p. 84, lines 1-5; p. 85, lines 1-7; Gov. Ex. 32).

9. On or about April 23, 2013, while IRS Collections was pursuing the Gandys, Defendant wrote a check to herself from her USAA bank account in the amount of $170,000 and then deposited these funds into a newly created account in her name at Wells Fargo Bank. (Gov. Ex. 30, p. 144, lines 24-25; p. 145, lines 1-25; p. 146, lines 1-25; p. 147, lines 1-3). In her Rule

2004 examination, Defendant admitted later depositing this money into yet another account in her mother's name to keep it away from her husband, that Defendant continued to control the funds, and that these actions were a "mistake." (Gov. Ex. 26, p. 145, lines 1-25).

10. In addition, the Gandys purchased a number of planes for their business operations and seven vehicles (two Ferraris, two Porsches, a Mercedes Benz, an Audi and an Aston Martin). (Gov. Ex. 26, p. 46, lines 15-23; p. 47, lines 1-8, p. 56, lines 3-5, 18-24; p. 59, lines 12-15; p. 60, lines 14-23; Gov. Ex. 1, p. 23, lines 24-25; p. 24, lines 1-25; p. 25, lines 1-20, p. 29, lines 18-25, p. 30, lines 1-25, pp. 31-32, p. 33, lines 5-25; p. 34, lines 1-12; p. 36, lines 15-23; p. 38, lines 17-25). Shortly before they filed their chapter 7 bankruptcy case, the Gandys purchased two 2014 Volkswagens for themselves and a 2013 Fiat for one of Mr. Gandy's adult daughters. (Gov. Ex. 5; Gov. Ex. 26, p. 58, lines 7-9).

11. After this bankruptcy case was filed, Defendant purchased Gemini Aviation d/b/a Dugosh, an aircraft repair company where her husband works (Gov. Ex. 34), and failed to disclose it in her answers to the United States' interrogatories. (Gov. Ex. 24).

12. Defendant is fifty-nine years of age. (Corrine Gandy Decl., Ex. A, para. 1).[3] She first started working at the age of sixteen. *Id.* She grew up in a military family in the United States, living in at least seven different places where her father had been stationed, and joined the U.S. Air Force at the age of twenty, serving one four year term. *Id.* During that time, she married a military officer and then got out of the Air Force to pursue a degree. *Id.* She was married seven years and had two children during her first marriage but divorced from her then spouse in 1985, whereupon she took a job at Kelly AFB in San Antonio, starting as a secretary. *Id.* She worked at Kelly AFB approximately fifteen years. *Id.*

---

[3] The Corrine Gandy Declaration is attached to the Mrs. Gandy's Response to the United States Motion for Summary Judgment.

13. Defendant met James Gandy in approximately 1993-1994, and the two were married in 1997. *Id.* James was an engineer and inventor who owned a successful printing manufacturing company known as Sign Tech. *Id.*

14. After the Gandys married, James suggested that Defendant did not need to work and could help out more at the home, as James had three minor children, two of whom came to live with the Gandys within six months of their marriage. *Id.* Defendant has been a housewife since 1997 and has been entirely dependent upon Mr. Gandy for support for almost twenty years. *Id.* Defendant has worked a part-time job since the summer of 2013 as a yoga instructor at the Kroc Salvation Army in Kerrville, typically earning between $500-$1000/mo. *Id.* The Gandys are now separated and going through a divorce,[4] and Defendant states she will be requesting spousal support from James Gandy because she does not have the job skills to now re-enter the workforce and earn a living. *Id.*

15. Since Defendant first started working more than forty years ago, she has always filed her tax returns on time (including extensions James requested during her marriage to him), and alleges that she has always paid her taxes in full and on time, other than the tax assessed on the Amended 2007 return. *Id.* ¶ 4.

16. In 2007, Mr. Gandy derived all of his income from his position as CEO of a company called Gandinnovations. *Id.* ¶ 6.

17. Since the early 1990's, a CPA, David Owens, has prepared the Gandy's joint tax returns. *Id.* ¶ 8. Defendant has met Mr. Owens but has had little contact with him over the entire time period that he has prepared the Gandy's tax returns. *Id.*

18. The Gandys made voluntary payments on their 2007 tax liability from December 2011, through June 2014, paying a total of $990,145.16. *Id.* ¶ 11 & Ex. "A-2".

---

[4] A petition for divorce was filed on November 9, 2015. There has been no other activity in the case. (Gov. Ex. 39).

DISCUSSION

An individual debtor under Chapter 7 of the Bankruptcy Code is generally granted a discharge of all debts that arose before the date of the order of relief. 11 U.S.C. § 727(a)&(b). Section 523 of the Bankruptcy Code, however, provides exceptions to such discharge. In particular, 11 U.S.C. § 523 provides, in pertinent part, that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt (1) for a tax . . . – (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

A debtor has willfully attempted to evade or defeat a tax within the meaning of § 523(a)(1)(C) of the Bankruptcy Code where the debtor: (1) has a duty under the law, (2) knew of the duty, and (3) voluntarily and intentionally violated that duty. *Bruner v. United States*, 55 F.3d 195, 197 (5th Cir. 1995); *In re Toti*, 24 F.3d 806, 809 (6th Cir. 1994). There is no requirement of an affirmative act or commission. *Bruner*, 55 F.3d at 200 ("Section 523(a)(1)(C) surely encompasses both acts of commission as well as culpable *omissions*."); *Toti*, 24 F.3d at 809. A debtor's actions are willful under § 523(a)(1)(C) if they are done voluntarily, consciously, or knowingly and intentionally. *Toti*, 24 F.3d at 809 (citation omitted). The phrase "in any manner," is interpreted broadly and regularly includes attempts to evade payment of tax as well as actions to avoid assessment of tax. *Bruner*, 55 F.3d at 200.

In this case, the first two prongs of the *Bruner* test are met because the Gandys had previously filed tax returns before and after tax year 2007. *See State Farm Life Ins., Co. v. Gutterman*, 896 F.2d 116, 119 n.3 (5th Cir. 1990) ( holding that the filing of tax returns supports the inference that the defendant knew he had a duty to pay federal income taxes). The third prong, the "willful attempt" standard, contains both a conduct requirement (that the debtor "attempted in any manner to evade or defeat [a] tax") and a mental state requirement (that the

11

attempt was "willful").  *United States v. Stanley*, 595 F. App'x 314, 317-18 (5th Cir. 2014).  The ability to pay is only one factor in the analysis and not the "litmus test" for determining nondischargeability under § 523(a)(1)(C).  *Grothues v. IRS (In re Grothues)*, 226 F.3d 334, 339 (5th Cir. 2000).  Denying a debtor a discharge of his unpaid federal taxes is appropriate where there is a pattern of the debtor failing to pay taxes by fraudulent transfers and concealment of assets.  *Bruner*, 55 F.3d at 200.

Defendant's 2007 joint federal income tax is *res judicata*.  This Court determined Defendant's 2007 tax liability in the Agreed Judgment (Gov. Ex. 8), between the United States and her husband, James Gandy, entered on December 4, 2015.  *See **Matter of James Carroll Teal (United States v. Teal)***, 16 F.3d 619, 621 (5th Cir. 1994) (per curiam) (finding that a tax court adjudication of tax liability has binding effect).  Defendant submitted no summary judgment evidence that contests the amounts of tax, interest, or penalties.  By contrast, the United States' motion was supported by competent summary judgment evidence.  *See* IRS Form 4340, Certificates of Assessments and Payments (Gov. Ex. 37), and Declaration of James Ashton (Gov. Ex. 38), with the attached IRS interest update (Ex. C thereto), showing the tax balance due, with interest and penalties thereon, as of June 27, 2016, is $2,143,455.83.  The IRS Form 4340 is presumptive proof of the validity of a federal tax assessment.  *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992) (holding that a certificate of assessment is presumptive proof of the assessment absent controverting evidence).

On or about October 14, 2008, Defendant signed, under penalties of perjury, and filed her joint 2007 federal income (Form 1040) tax return reporting a loss of $1,411,254 (negative adjusted gross income "AGI"), and seeking a refund of $33,524.  (Gov. Ex. 2, pp. 1-2).

Notwithstanding Defendant's assertions that she did not understand Mr. Gandy's business operations; that she placed money into accounts with her mother to pay the IRS or preserve business assets; that she was completely dependent on James Gandy for her financial well-being; and that she did not understand the contents of her original and amended 2007 tax returns; certain facts are not in dispute because Defendant signed the following documents:

1. On or about September 11, 2009, Defendant signed, under penalty of perjury, and filed her amended joint 2007 federal income (Form 1040X) tax return. The amended 2007 Form 1040 stated positive AGI of $16,442,332; an increase of $17,853,586 over the AGI she reported in her original (Form 1040) tax return, which disclosed income tax owing in the amount of $2,416,541. (Gov. Ex. 4, p. 1).

2. On or about January 15, 2010, Defendant signed, under penalty of perjury, Disclosures to the IRS Criminal Investigation Division, wherein she admitted: (1) a 50% ownership interest in Sarven Management, Ltd., a Swiss partnership, which had a Swiss bank account; (2) that the highest aggregate value of her offshore accounts/assets in 2003, 2004, 2005, and 2006 was between $100,000 to $1 million; (3) that the estimated total of her unreported income in 2003, 2004, 2005, and 2006 was between $0 and $100,000; (4) that she possibly had unreported income of over $10 million in 2007; and (5) that she may have a financial interest in a Citibank account in her husband's name in Dubai. (Gov. Ex. 29, pp. 1-6).

3. On October 22, 2010, Defendant signed the James Gandy Life Insurance Trust Agreement, which created the James Gandy Life Insurance Trust, the Gandy Family Trust, and the Gandy Marital Trust.

4. On December 5, 2011, Defendant signed a Closing Agreement with the IRS, wherein she admitted that she "underreported federal income taxes during the period 2003 through 2008

through offshore financial arrangements (including arrangements with foreign banks, financial institutions, corporations, partnerships, trusts, or other entities) . . . ."  (Gov. Ex. 3, p. 1).  In the same Agreement, Defendant admitted underreporting income, in tax year 2007 in the amount of $18,822,602.  On page 2 of the agreement, Defendant agreed to the following statement: "For 2007 a penalty is due under 31 U.S.C. section 5321(a)(5) in the amount of $16,000 for failure to file a Report of Foreign Bank and Financial Accounts ('FBAR'), TDF 90-22.1."

Direct proof of a debtor's intent to evade taxes is generally provable by circumstantial evidence and reasonable inferences drawn from the existence of certain fact patterns, otherwise called badges of fraud.  *In re Binkley*, 176 B.R. 260, 265 (Bankr. M.D. Fla. 1994), *aff'd*, 242 B.R. 728 (M.D. Fla. 1999) (citing *Berzon v. United States*, 145 B.R. 247, 250 (Bankr. N.D. Ill. 1992)); *see also* 4 Collier on Bankruptcy, ¶ 727.02 (15th ed. 1994) ("a finding of actual intent may be based upon circumstantial evidence or on inferences drawn from a course of conduct").

The United States has proven by a preponderance of the evidence that Defendant willfully attempted to evade or defeat the assessment and the collection of her 2007 income tax. *See Grogan v. Garner*, 498 U.S. at 287-88 (finding that dischargeability complaints may be proven by a preponderance of the evidence).  Defendant clearly participated in fraudulent acts to avoid paying her taxes—the understatement of her 2007 income by $18 million; the use of offshore bank accounts in tax-haven countries; the fraudulent concealment of her interest in a $1 million home and other valuable assets in bankruptcy when she had a legal duty to fully and truthfully disclose her assets; and the submission to the IRS of two false financial statements, failing to disclose assets in her Schedules.

The Court agrees with the United States that the evidence demonstrates that Defendant concealed assets with the intent to delay and hinder the United States as a creditor.  The

attempted concealment of an asset (the Gandys' home) in the name of an insider (her elderly mother-in-law) is a badge of fraud. *See Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992) (finding of an insider is defined by: (1) closeness of the relationship between the parties and (2) whether the transaction was at arm's length).  Also, the Gandys controlled the concealed property after it was allegedly transferred to Prem Gandy—they lived in the home and paid all expenses pertaining to the home.  The Gandys also concealed an airplane, a vehicle, and an account receivable in order to make it appear that they had no assets with which to satisfy their federal income tax debt.

The bank records attached to the Ashton Declaration (Gov. Ex. 38E) show Defendant made large deposits and withdrawals of funds from January 23, 2009, through September 29, 2014, which are further detailed in the chart submitted herewith as Gov. Ex. 43.  These records clearly show that Defendant had the financial ability to pay her tax debt during times when she made exorbitant expenditures and preferred other creditors.  Gov. Ex. 43 shows that from January 23, 2009, through September 29, 2014, Defendant had signatory authority over accounts wherein over $13.8 million was deposited and from which $14.7 million was withdrawn.  As to some of these accounts, Defendant had sole signatory authority—accounts 2496, 0730, 8529, 5139, 8969, and 8529.  Also, Defendant testified in her February 26, 2015, Rule 2004 examination that she was "responsible for the family finances, paying the bills." (Gov. Ex. 44).

Defendant also lived a lavish lifestyle while not paying the $2 million tax debt she admitted she knew existed.  For most of the relevant time frame of 2007-2015, Defendant lived in a $1 million mansion, drove luxury vehicles, and jetted around the world to exotic countries.  A number of courts have taken similar lavish lifestyles into account in denying discharge under 11 U.S.C. § 523(a)(1)(C).  *See United States v. Mixon (In re Mixon)*, No. 07-3257, 2008 WL

2065895 (Bankr. N.D. Tex. May 13, 2008) (Houser, C.J.) (debtors acquired expensive assets in the face of serious financial difficulties, spent money that could have been used to pay their federal taxes on vehicles and leisure activities, and enjoyed assets held in the name of a family member, thereby reducing their collection sources subject to IRS execution); *United States v. Acker (in re Acker)*, No. 09-04165, 2010 WL 3813243 (Bankr. E.D. Tex. Sept. 28, 2010) (Rhoades, C.J.) (debtor had enough income to buy a new house when he could afford to pay his IRS debts, used a request for IRS administrative procedures to delay collection efforts, and hid assets from IRS); *Matter of Zuhone*, 88 F.3d 469 (7th Cir. 1996) (debtor transferred money and farmland to children); *In re Schaeffer*, 201 B.R. 282 (Bankr. D. Colo. 1996) (chapter 7 debtor's actions, in conveying marital residence to wife for no consideration to shield wife and assets from IRS, rendered taxes non-dischargeable).

In sum, Defendant's 2007 income taxes are non-dischargeable under 11 U.S.C. § 523(a)(1)(C), because Defendant willfully attempted to evade or defeat them in the same manner as in *Bruner*. *See Bruner*, 55 F.3d at 200 (debtor's pre-petition pattern of failing to pay their taxes and attempting to hide income and assets constituted a willful attempt to evade or defeat the tax liabilities, thereby warranting excepting their taxes from discharge).

### CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is hereby GRANTED; and it is further

ORDERED, that the debt Defendant owes to the United States (IRS) is a nondischargeable debt under 11 U.S.C. § 523(a)(1)(C); and it is further

ORDERED, that the debt is a liquidated debt in the amount of $2,846,453.45, subject to all payments and accrual of statutory interest; and it is further

ORDERED, that all other relief not specifically granted herein is DENIED.

###